IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IKEA ROGERS, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL TENANT NETWORK, INC.,<br><br>*Defendant*. | Civil Matter No. 24-2529<br><br>**CLASS ACTION COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff IKEA ROGERS, on behalf of herself and all others similarly situated, and complaining of Defendant NATIONAL TENANT NETWORK, INC., respectfully alleges as follows:

### I.  PRELIMINARY STATEMENT

1. This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") by Plaintiff, seeking relief for Defendant's widespread violations thereof for herself and all others similarly situated.

2. Despite the public availability of court records that conclusively demonstrate that certain eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, misleading, and inaccurate tenant screening reports to landlords in violation of FCRA section 1681e(b).

3. Similarly, although the final disposition (or lack of a disposition) of a criminal charge is available on the regularly-updated public court record of criminal proceedings, Defendant routinely fails to consult such records and thus publishes harmful, misleading, and inaccurate criminal record information on reports, even where the criminal charge did not result in a

conviction and predates the report by more than seven years, in violation of FCRA section 1681c(a)(5).

4. Defendant compounds this misreporting by failing to provide consumers with a clear and accurate disclosure of all information on file about them, including the original and any intermediate sources of such information, upon such consumers' request as required by FCRA section 1681g(a)(2). Instead, Defendant fails to identify the court(s) from which such records originate, and to identify any intermediate private vendor sources of information which may be the source of inaccuracies on the report. Defendant's failure to provide complete disclosures impairs consumers' rights under the FCRA to dispute such information and have it corrected at the source to prevent future misreporting.

5. Defendant's practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate and/or irrelevant adverse information.

## II. JURISDICTION *and* VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

7. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

8. Plaintiff Ikea Rogers ("Plaintiff" or "Ms. Rogers") is an adult individual who resides in this District. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant National Tenant Network, Inc. ("Defendant" or "NTN") regularly conducts business in the Commonwealth of Pennsylvania.

10. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

...

2

## IV. FACTUAL ALLEGATIONS

11. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

12. Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom its reports relate. 15 U.S.C. § 1681e(b).

13. Defendant is required by the FCRA to follow procedures to assure that certain types of information, including records of criminal charges that did not resulting in a conviction that predate the report by more than seven years, are not included on any consumer report. 15 U.S.C. § 1681c(a)(5).

14. For many years, Defendant has purchased public records information pertaining to residential eviction litigation ("eviction information") from third-party vendors instead of retrieving the actual underlying court records themselves — or even more manageable digital representations — for the purpose of creating and selling consumer reports to third party landlords and rental property managers.

15. The eviction information Defendant purchases is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

16. Defendant knows that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for consumer reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

17. Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of the "Big Three" CRAs, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., and dozens of FCRA lawsuits throughout the United States, including in this District.

18. For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

19. Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

---

[1]  CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

[2]  *Id*. at 2.1.2.

20. Other regulators, including the New York Attorney General, initiated investigations of the Big Three in part due to similar problems with the accuracy and currency of publics records information in credit reports.

21. The Big Three ultimately entered into an agreement[3] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

22. As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the Big Three ceased including in credit reports civil judgment information that did not meet certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[4]

23. Although the Big Three stepped back from using public records information in some of their consumer reporting products, other CRAs, like Defendant, continue to do so.

24. Furthermore, the CFPB has issued an advisory opinion making clear that consumer reporting agencies must identify "both the original source and any intermediary or vendor source (or sources) that provide the item of information from the original source to the consumer reporting agency" in its disclosures to consumers.[5]

25. At all times relevant to these allegations, Defendant was aware of the investigations of the CFPB and state attorneys general into the Big Three's public records practices, the NCAP,

---

[3] *Settlement Agreement*, In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC, http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

[4] *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

[5] *See* CFPB, Advisory Opinion on Fair Credit Reporting; File Disclosures, 89 Fed. Reg. 4167 (Jan. 23, 2024) *available at* https://www.govinfo.gov/content/pkg/FR-2024-01-23/pdf/2024-00786.pdf

the various public records class actions pending throughout the United States, the guidance of the CFPB, and Defendant's obligations under the FCRA.

26. Nevertheless, Defendant, fully aware of the problems associated with the incomplete and inaccurate public records information purchased from vendors of such information, continues to report incomplete information regarding eviction and criminal proceedings that is incomplete and/or out of date according to the FCRA to potential landlords.

27. The data and reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer. Thus, the reports that Defendant sells about thousands of consumers each year are "consumer reports." *See* 15 U.S.C. § 1681a(d).

28. Based upon a common policy and practice, Defendant regularly reports inaccurate and out-of-date eviction information pertaining to cases and judgments that have been dismissed, withdrawn, vacated, satisfied, or have resulted in a judgment for the tenant.

29. Based upon a common policy and practice, Defendant regularly reports records of criminal proceedings that did not result in any conviction and which predates the report by more than seven years.

30. Upon information and belief, Defendant obtains public record information, including eviction and criminal record information, from private third party vendor sources rather than directly from courthouses.

31. Based upon a common policy and practice, Defendant regularly fails to identify all of its original and/or intermediate vendor source(s) of public record information in file disclosures provided to consumers upon request, including but not limited to identifying the jurisdiction from

which court records were obtained, and any private vendors sources from which court records were obtained.

32. Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce. Consumers who have obtained the dismissal or withdrawal of an eviction matter, settled an eviction complaint, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing.

33. Defendant's practices also violate the FCRA as a matter of law and exact serious consequences on rental housing applicants and interstate commerce when Defendant reports and criminal record information that did not result in a conviction after the seven years permitted under the FCRA. Consumers subject to such information on their reports are likewise prejudiced in their ability to obtain leased housing.

34. Defendant's practices with respect to non-disclosure of all original and/or intermediate vendor sources of public record information harm consumers by denying them statutorily-mandated information, and preventing them from vindicating their FCRA rights to dispute and have information corrected, including at the underlying source, to prevent future misreporting.

35. Defendant's practices as described above are uniform and not unique to each consumer or transaction.

36. Defendant's reporting of inaccurate and/or outdated eviction and criminal record information is not accidental, and of failing to disclose all of its original and intermediate sources of information, but instead a result of deliberately designed policies and procedures.

37. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and

under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

*Plaintiff's Experience*

38. At all times relevant to Plaintiff's allegations, information pertaining to Landlord Tenant Complaints filed in the Philadelphia Municipal Court, including full case dockets and digital representations of all documents filed in such cases, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online for free from the Philadelphia Municipal Court Electronic Filing System.

39. On or about December 4, 2023, Plaintiff applied to rent a home at 5166 Funston Street, in Philadelphia, from EGE Management, LLC (hereafter, "EGE").

40. In conjunction with her application, Defendant prepared an "NTN DecisionPoint Instant Resident Selection System" report (the "IRSS Report") about Plaintiff for a fee, and delivered the report to EGE on or about January 4, 2024.

41. The January 4, 2024 IRSS Report contained inaccurate public record information Defendant obtained pursuant to its standardized procedures.

42. First, the report included a public record of an eviction filing, as follows:

**Public Records** see NTN Tenant Performance Profile
| Action | Date of Filing | Disposition |
|---|---|---|
| Rogers, Ikea (1614 Brill) | 08-Sep-2023 | 1969.22+ |

43. In reality, the disposition of the case as of September 29, 2023 was a $0 Judgment by Agreement which provided for the judgment to be vacated, and the complaint was ultimately

Withdrawn without Prejudice. Documents reflecting these updates were filed on the publicly-available case docket contemporaneously with their entry.

44. Defendant's reporting of the "Disposition" of the case as the amount sought in the filing is inaccurate and misleading, suggesting that a judgment had been entered in that amount.

45. Defendant had failed to update the status of the case to reflect the September 29, 2023 filing for more than three months.

46. Therefore, the IRSS Report contained no reference to the Judgment by Agreement nor any resolution of the matter from case LT-23-09-08-3555.

47. The IRSS Report included a header labeled "Multistate Criminal / Other Public Records Search."

48. Defendant, pursuant to its standardized procedures, failed to exclude from the report criminal records that did not result in a conviction and which pre-dated the report by seven or more years.

49. Defendant included the following criminal record information on its January 2024 report concerning Ms. Rogers:

| | | |
|---|---|---|
| **IKEA ROGERS**<br>D.O.B.: **02/10/1990**<br>Gender/ Race: **Female / Black**<br>Address:<br>**Philadelphia, PA 19122**<br>Offense County: **Delaware**<br>Source:<br>**Pennsylvania Admin Office of Courts (Non Traffic Filing)**<br>Match Type:<br>**Exact Name And DOB Match** | **COUNT 1. THEFT OF SERVICES-ACQUIS OF SERVICE** | |
| | File Date | 03/17/2015 |
| | Offense Date | 03/12/2015 |
| | Statute | 3926(A1) |
| | Docket Number | MJ-32133-NT-0000338-2015 |
| | Docket Type | Non-Traffic |
| | Case Type | Non-Traffic |
| | Court Name | MDJ-32-1-33 |

50. Although the criminal record was dated March 2015, almost nine years prior to the date of the January 2024 report, and does not include any record of a conviction, Defendant nonetheless included it on the report.

9

51. As a result of Defendant's inaccurate and defamatory reporting, EGE denied Plaintiff's application, and Plaintiff experienced harms including harm to her reputation and emotional distress.

52. Plaintiff made a request for information to Defendant on or about April 3, 2024.

53. Defendant treated Plaintiff's April 3, 2024 communication as a file disclosure request, and sent her a response dated April 22, 2024 purporting to be a full file disclosure.

54. Defendant's April 22, 2024 communication referenced the September 2023 eviction filing, but did not identify the source(s) from which Defendant obtained any records regarding the filing, including but not limited to the court in which the eviction record was filed, or any intermediate vendor source(s).

55. Without identification of all direct and indirect sources of information, Plaintiff's ability to confirm that the record is complete and correct at the source(s), and to otherwise vindicated her rights under the FCRA, is impaired.

56. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as set forth under sections 1681c(a)(2), 1681e(b) and 1681g(a)(2) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.   CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of the following Classes for Defendant's violations of the FCRA:

a. *Inaccurate Eviction Records Class*

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendant and delivered to any third party that contained eviction information, but which

10

failed to state that the action had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

b. *Outdated Criminal Record Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories who were subjects of a tenant screening report prepared by Defendant and delivered to any third party that contained information pertaining to a criminal record for which there was no conviction reported, and that criminal record was dated more than seven (7) years prior to the date of the report.

c. *Failure to Disclose Source(s) Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of any class certification decision, all natural persons with an address in the United States and its Territories to whom Defendant sent a communication in response to that consumer's request for information which did not identifying both the original and any intermediate vendor source(s) from which Defendant obtained the public record information referenced in the communication.

58. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the thousands. Defendant sells eviction information to thousands of landlords and rental property agents throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendant prepares and sends disclosures to consumers using standardized policies and procedures.

59. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question is whether Defendant violated the FCRA by failing to follow reasonable procedures to assure the maximum

11

possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been resolved by agreement, withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendant violated the FCRA by reporting criminal information that is barred by 15 U.S.C. § 1681c(a) on a consumer report, whether Defendant failed to provide all of the information it maintains about consumers upon request; and whether Defendant violated the FCRA by failing to disclose both the original and intermediate vendor source(s) of public record information referenced in the disclosure.

60. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

61. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

62. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63. Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction and criminal litigation records.

64. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## VI. CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

65. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Inaccurate Eviction Records Class for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, Defendant failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Inaccurate Eviction Records Class, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### COUNT II – VIOLATION *of* FCRA SECTION 1681c(a)(5)

67. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

68. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Outdated Criminal Record Class for negligently and willfully including information barred by 15 U.S.C. § 1681c(a)(5) on tenant screening reports that it sells. Specifically,

Defendant includes criminal record information that pre-dates the report by seven or more years on reports even where no disposition is reported, thereby publishing barred information to their potential landlords and property managers.

### COUNT III – VIOLATION *of* FCRA SECTION 1681g(a)(2)

69. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

70. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Failure to Disclose Source(s) Class for negligently and willfully failing to identify all original and intermediate source(s) from which Defendant obtained the public record information referenced in the response to the consumer's request, including but not limited to the originating court and any private vendor source(s).

### COUNT IV – DEFAMATION

71. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

72. In communication to EGE and/or its other customers that the disposition of an eviction filing resulted in a disposition of "1969.22+" Defendant expressly communicated a factual statement about Plaintiff indicating that a judgment of $1,969.22 had been entered against her in the eviction case referenced.

73. Defendant intentionally communicated this statement about Plaintiff to EGE.

74. This communication was false, as shown by the publicly available record of the eviction filing.

75. Defendant made this defamatory statement with actual malice – *i.e.*, with a reckless disregard for its falsity.

76. Defendant made this statement without privilege or justification.

77. This statement directly injured Plaintiff by harming her reputation and directly causing her to be denied a rental opportunity.

78. It was Defendant's expectation and intent that EGE would rely on its representation regarding the amount of the disposition as represented on its customer report.

79. As a result of Defendant's false and defamatory statement, Plaintiff suffered damages including but not limited to harm to reputation, loss of rental opportunity, time spent to resolve the problem, payment of additional rental application fee(s), and/or emotional distress.

## VII.   PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

A.   certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

B.   declaring that Defendant's actions as described above are in violation of the FCRA;

C.   awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D.   awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

E.   awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F.   awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

G.   and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

80. Plaintiff demands trial by jury on all issues so triable.

Dated: June 10, 2024                           Respectfully submitted,

                                                      IKEA ROGERS, *on behalf of herself and all others similarly situated.*

By:   */s/James A. Francis*
        James A. Francis
        John Soumilas
        Lauren KW Brennan
        FRANCIS MAILMAN SOUMILAS, P.C.
        1600 Market Street, Suite 2510
        Philadelphia, PA 19103
        T: (215) 735-8600
        F: (215) 940-8000
        jfrancis@consumerlawfirm.com
        jsoumilas@consumerlawfirm.com
        lbrennan@consumerlawfirm.com

        Shamus Brennan
        LAW PROJECT OF PENNSYLVANIA
        1211 Chestnut Street, Suite 600
        Philadelphia, PA 19107
        T: (215) 587-9377
        F: (215) 587-9902
        brennan@lawprojectpa.org

        *Attorneys for Plaintiff*